UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CONNIE STEELMAN, Individually, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12-cv-00191 |
| ) | |
| CITY OF SALEM, A Municipality and ) | |
| Political Subdivision of the State of ) | |
| Missouri, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Connie Steelman ("Plaintiff") instituted this action, seeking declaratory and injunction relief under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, against Defendant City of Salem ("Defendant") on February 3, 2012. (Doc. No. 1.) Plaintiff alleges that the Salem Police Department building ("SPD Building") located at 500 North Jackson Street in Salem, Missouri is not ADA-compliant and that, accordingly, as a half-year resident of Salem who is bound to ambulate in a wheelchair, Plaintiff has suffered and will continue to suffer unlawful discrimination, caused by Defendant, on the basis of her disability. Discovery is complete, and the matter is set for trial. Defendant moves for summary judgment as to Plaintiff's claims. (Doc. No. 37.) For the reasons discussed below, the motion will be granted in part and denied in part.

## **BACKGROUND**

Plaintiff is a Florida resident who resides in Salem, Missouri for approximately six months each year. (Doc. No. 1 ¶ 2.) She is bound to ambulate in a wheelchair. (*Id.*) Plaintiff has visited the SPD Building and plans to return to the property both to avail herself of the public goods and

services offered there, as well as to determine whether the SPD Building is ADA-compliant. (*Id.* ¶ 5.) Plaintiff contends that multiple barriers to her accessing the SPD Building, as a wheelchair-bound individual, will prevent her from enjoying the goods and services otherwise offered to the public at the SPD Building. (*Id.* ¶ 6.)

The SPD Building was constructed in or around 1928 and acquired by Defendant in 1988. (Doc. No. 38 at 2.) There have been no significant renovations to the building since it was acquired by Defendant. (*Id.*) Only portions of the building are accessible to the public; specifically, a single room. (*Id.*) All other portions of the building are security-restricted. (*Id.*)

Plaintiff alleges that the SPD Building is not ADA-compliant in that: (1) the SPD Building lacks an accessibility route from public transportation stops, public streets, and sidewalks in violation of the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"); (2) the SPD Building lacks an accessibility route from parking spaces in violation of the ADAAG; (3) step-grade changes in level from the asphalt to the existing entrance of the SPD Building exceed what is permitted under the ADAAG; (4) the entrance ramp to the SPD Building has a slope in excess of what is permitted under the ADAAG and is otherwise not designed in compliance with the ADAAG; (5) doors at the SPD Building are not automatic or power-assisted and have inadequate maneuvering space in violation of the ADAAG; (6) Defendant has not made reasonable modifications to its policies, practices, or procedures as necessary to afford goods, services, facilities, privileges, and advantages to the disabled; and (7) restrooms at the SPD Building lack the use elements required under the ADAAG. (Doc. No. 1 ¶ 10.)

Defendant does not believe that the SPD Building is in any way not ADA-compliant. (Doc. No. 38 at 7-8.) According to Defendant, to the extent there may be potential ADA violations at the SPD Building premises, there are only three (as opposed to the seven alleged by Plaintiff).

Specifically, according to Defendant, it may be true that: (1) a handrail needs to be installed on the building side of the existing entrance ramp; (2) the front-door entrance needs to be widened; and (3) no handicap parking is available. (Doc. No. 38-5 at 2.) Defendant rests this contention on a visit to the premises by its proffered expert, "Accessibility Specialist" Herman Vance, who is employed by the Disabled Citizens Alliance for Independence, a community-based independent living center serving the Missouri counties of Crawford, Dent, Iron, Reynolds, and Washington. (*See* Doc. No. 38-5; *see also* http://www.dcai.us (Disabled Citizens Alliance for Independence website).) Defendant does not indicate what if any steps it has taken to remedy the barriers alleged by Plaintiff but not corroborated by Mr. Vance.[1] As for the three potential ADA violations reported by Mr. Vance, Defendant: (1) "will be installing" a handrail on the building side of the entrance ramp; (2) is "planning to replace the door" and "accepting bids for the work;" and (3) is "in discussions with a third party" to provide handicap parking. (Doc Nos. 38 & 38-1.) According to Defendant, Plaintiff has conceded that the only remaining possible violation at the SPD Building is the door. (Doc. No. 38-6.)

Plaintiff seeks injunctive relief with regard to Defendant's alleged failures to comply with the ADA, and to avert future discrimination, on the basis of her disability, by Defendant. (Doc. No. 1 ¶ 24-25.) Plaintiff asserts that such discrimination will occur if Defendant does not remedy the barriers to access that she alleges. (*Id.*)

## LEGAL STANDARD

---

[1] Notably, Mr. Vance identifies two elements of non-compliance at the SPD Building not complained of by Plaintiff—the absence of a handrail on the building side of the entrance ramp and the lack of handicap parking. Thus, if both Plaintiff and Mr. Vance are correct, there are nine elements of non-compliance rather than the seven complained of by Plaintiff.

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). Material facts are those that might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. There is a genuine dispute about a material fact if there is sufficient evidence for a reasonable jury to return a verdict in favor of the nonmoving party. *Id.* The moving party bears the initial burden of informing the Court of the basis for its motion and of identifying those portions of the record demonstrating the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden, the burden shifts to the nonmoving party to present specific facts showing there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The Court's function is not to weigh the evidence, but rather to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. 2505.

## DISCUSSION

Defendant believes that it is entitled to summary judgment on three grounds, contending that: (1) Plaintiff lacks constitutional standing to bring a claim under Title II of the ADA; (2) Plaintiff fails to state a claim under Title II of the ADA; and (3) Plaintiff's claims are moot and therefore not subject to injunctive relief. Defendant additionally asserts that Plaintiff is not entitled to attorneys' fees as a matter of law. These arguments will be addressed in turn directly below.

**I.     Plaintiff Has Article III Standing**

Title II of the ADA, captioned "Public Services," states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA provides for a private right of action allowing a plaintiff to seek both monetary damages and, as in the instant case, injunctive relief. *See Olmstead v. L.C. ex rel. Zimring*, 587 U.S. 581, 590 n.4, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) (discussing the remedial scheme under Title II of the ADA).

In order for a plaintiff to avail herself of the private right of action under Title II of the ADA, she must have standing. Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and controversies. Therefore, a plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). As such, federal courts are required to examine standing *sua sponte*. *See United States v. Hays*, 515 U.S. 737, 742 (1995).

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010)). "It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185-86, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

The party invoking federal jurisdiction bears the burden of establishing standing. *Amnesty Int'l*, 133 S.Ct. at 1148-49. For purposes of Title II of the ADA, a plaintiff must have a plan to

return to the allegedly non-compliant structure, with an intent to benefit from its services, programs, or activities, which is "concrete and particularized" and not merely "conjectural or hypothetical." *See Steger v. Franco, Inc.*, 228 F.3d 889, 892-93 (8th Cir. 2000).

In addition, and separately, under the ADA's statutory scheme, "testers," *i.e.*, plaintiffs who intend to test the ADA compliance of entities subject to the ADA's requirements, have Article III standing. *See, e.g.*, *Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004) (discussing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)) (holding that qualified individuals with a disability who are testing an entity's compliance with federal disability discrimination statutes have standing to sue under Title II of the ADA); *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1103-04 (9th Cir. 2004) (relying on *Havens Realty* to conclude that disabled testers who sue under § 3604(f)(2) of the Fair Housing Act and who have experienced the "dignitary harm" of observing discriminatory conditions have standing); *Kyles v. J.K. Guardian Sec. Servs.*, Inc., 222 F.3d 289, 298 (7th Cir. 2000) (relying on *Havens Realty* to conclude that employment discrimination testers who were discriminated against had standing to sue under Title VII of the Civil Rights Act of 1964); *see also Shaver v. Independent Stave Co.*, 350 F.3d 716, 723-25 (8th Cir. 2003) (relying on "the so-called 'tester' cases, where minority applicants apply for jobs or housing that they have no intention of accepting for the sole purpose of determining whether the employer or landlord is unlawfully discriminating" to conclude that terminated employee's harassment and retaliation claims under the ADA were actionable).[2]

---

[2] In *Havens Realty*, the Supreme Court held that an African-American tester who was given misinformation about the availability of a rental property had alleged sufficient injury in fact to support standing to sue under the Fair Housing Act. 455 U.S. at 374, 102 S.Ct. 1114. The *Havens Realty* tester never intended to rent the apartment. *Id*. at 373, 102 S.Ct. 1114. The tester's sole purpose was to determine whether the defendant engaged in unlawful practices. *Id*.

Defendant asserts that Plaintiff lacks Article III standing because she has not pled that she was denied services offered at the SPD Building and therefore has not pled an injury in fact. This argument ignores the crux of Plaintiff's Complaint, which is that, on the basis of her disability, she is and will continue to be, under the *status quo*, deterred from and denied the opportunity to partake of services otherwise available to the public at the SPD Building. In other words, because of her disability, Plaintiff is unable to *access* Defendant's services in a manner equal to that afforded other individuals. And equal access to services, rather than express denial of services, is the benchmark concern of Title II of the ADA.

For instance, in *Randolph v. Rogers*, 170 F.3d 850 (8th Cir. 1999), a hearing-impaired inmate sued the Missouri Department of Corrections and certain prison officials for failing to provide him with a sign language interpreter during disciplinary proceedings, in violation of, *inter alia*, Title II of the ADA. "The Department of Corrections argue[d] strenuously that Randolph was not *excluded* from prison services, programs, and activities," and had, thus, failed to state a claim. *Id.* at 858 (emphasis added). The Eighth Circuit squarely rejected this argument, explaining:

> It is true that Randolph could physically attend activities. However, the ADA … require[s] that otherwise qualified individuals receive '*meaningful access*' to programs and activities. *See Bonner v. Lewis*, 857 F.2d 559, 561 (9th Cir. 1988) (quoting *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)). The record does not contain credible evidence to support a finding that Randolph enjoyed meaningful access to the prison's internal disciplinary process, even if he was capable of limited participation.

*Id.* (emphasis added).

Consistent with *Randolph*, Plaintiff is not required to plead denial of or exclusion from services offered at the SPD Building; but, rather, she is required to plead, and has pled, denial of "meaningful access" to services offered at the SPD Building. This is an injury in fact satisfying Article III's standing requirements. In addition, consistent with the Eight Circuit's decision in

*Shaver* and the cases cited above in connection therewith, Plaintiff's pleaded intent to visit the SPD Building to ensure ADA compliance provides a further and separate basis for Article III standing; specifically, so-called "tester" standing.

## II.     Plaintiff Has Stated a Claim Under Title II of the ADA

To establish a violation of Title II of the ADA, a plaintiff must demonstrate that:  (1) she is a qualified individual with a disability; (2) she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and (3) that such exclusion, denial of benefits, or other discrimination, was by reason of her disability.  *See Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998) (citing cases).

Relying on the standard set forth in *Layton*, Defendant contends that Plaintiff has failed to state a claim under Title II of the ADA because she has failed to demonstrate that she was excluded from participation in or denied the benefits offered at the SPD Building.  Defendant's argument fails under *Layton* itself which, like *Randolph*, turns upon a defendant's provision of access to services pursuant to Title II of the ADA, rather than upon a defendant's affirmative denial of services to the disabled.

In *Layton*, the plaintiffs, who suffered from a range of mobility impairments, complained that the defendant was in violation of Title II of the ADA because it had not made the second floor of a county courthouse accessible to the mobility impaired.  After a bench trial, the trial court found in favor of the defendant, denying plaintiffs' request for mandatory injunctive relief.  The Eight Circuit concluded this denial was an abuse of the trial court's discretion and reversed.  In the opinion of the Eight Circuit, the plaintiffs:

> succeeded on the merits of their claim, and they will suffer substantial irreparable harm if the programs, services, and activities held in the Montgomery County Courthouse are not made *accessible* as required under the statutes.  Furthermore, public interest strongly favors mandating *accessibility*.  When these factors are

> balanced against the harm to the county of making its programs, services, and activities *accessible* the balance tips heavily in favor of granting [plaintiffs] the relief they request.

*Id*. at 858 (emphasis added).

Reading the Eighth Circuit's opinion in *Layton* in full, and in light of the Eight Circuit's opinion in *Randolph* discussed above, Plaintiff states a claim under Title II of the ADA because she pleads denial of meaningful access to the SPD Building. Contrary to Defendant's assertion, Plaintiff is not required to plead exclusion from participation in or denial of the benefits offered at the SPD Building in order to state a claim under Title II of the ADA. *See also, e.g.*, *Loye v. County of Dakota*, 625 F.3d 494, 496 (8th Cir. 2010) (citing *Randolph*, 170 F.3d at 858) ("[W]e construe Title II of the ADA as requiring that qualified persons with disabilities receive 'meaningful access' to a public entity's services, not merely 'limited participation.'"); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 913 (6th Cir. 2004) ("Title II ... imposes on public entities the requirement that they provide qualified disabled individuals with meaningful access to public services ...."); *Watson v. State of Utah*, 103 F.3d 145 (Table), 1996 WL 705219, at *3 (10th Cir. Dec. 9, 1996) ("Title II of the ADA requires public entities to provide physical access to programs and services offered as well as to ensure that such services and activities are readily accessible to and usable by qualified individuals with disabilities.").

### III.   Plaintiff's Claim for Injunctive Relief Is Not Moot

Defendant states that it has undertaken certain voluntary measures to achieve compliance under the ADA, and that these voluntary measures render Plaintiff's claim for injunctive relief moot. In order for voluntary measures to render a claim for injunctive relief moot under Title II of the ADA, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Layton*, 143 F.3d at 471 (quoting *Comfort Lake Ass'n, Inc. v. Dresel*

*Contracting, Inc.*, 138 F.3d 351, 355 (8th Cir. 1998) (citations omitted)).  So long as there is a reasonable expectation that the plaintiff could be subject to the same wrong again, at the hands of the defendant, a claim for injunctive relief under Title II of the ADA is not moot.  *See id.*; *see also Randolph*, 170 F.3d at 856-57.  A single element of outstanding, unlawful non-compliance is sufficient to defeat a mootness argument, as recurrence of the injury complained of is possible, and thus a live controversy remains.  *See, e.g.*, *Arkansas Adapt v. Johnson*, 149 F.3d 1186 (Table), 1998 WL 279356, at *1 (8th Cir. June 2, 1998) ("Although the appeal is ... *largely moot*, the alleged lack of appropriately located handicapped-parking spaces presents a live controversy.") (emphasis added).

      Plaintiff alleges at least seven violations of the ADA at the SPD Building.  Defendant asserts that there are none, but acknowledges three potential ADA violations based on Mr. Vance's review of the SPD Building.  Defendant contends, further, that Plaintiff has conceded there is only one outstanding violation—the width of the SPD Building door.  Defendant has not provided evidence regarding efforts to remedy the barriers alleged by Plaintiff.  Defendant has indicated, however, that the barriers identified by Mr. Vance "will be" remedied, *i.e.*, although the barriers exist now they will not, according to Defendant, exist in the future.[3]

---

[3] Defendant makes passing reference in its papers to 28 C.F.R. § 35.150(a), in a seeming effort to minimize its obligations under the ADA.  28 C.F.R. § 35.150(a) creates an obligation for a public entity to make reasonable modifications to ensure accessibility to a service, program, or activity.  *See Assoc. for Disabled Americans, Inc. v. Florida Int'l Univ.*, 405 F.3d 954,  959 n.5 (11th Cir. 2005).  28 C.F.R. § 35.150(a)(3) provides "an affirmative defense that the requested accommodation of the plaintiff's disability would constitute an undue burden, requiring 'a fundamental alteration in the nature of a service, program, or activity or in undue financial or administrative burdens.'"  *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (quoting 28 C.F.R. § 35.150(a)(3)).  Defendant provides no evidence, however, in support of such an affirmative defense, making it unavailing, as "a public entity [*i.e.*, Defendant] has the burden of proving that compliance with § 35.150(a)" would result in "undue financial and administrative burdens."  28 C.F.R. § 35.150(a)(3); *see also, e.g.*, *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000) (under 28 C.F.R § 35.150(a)(3) "the public entity has the burden of proving that compliance would require a 'fundamental alteration' or 'undue burden'").

Even assuming for purposes of the present motion that (1) Mr. Vance is a qualified expert under the Federal Rules of Evidence and per *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny[4] and (2) Plaintiff has conceded that there is only one outstanding violation,[5] Defendant's mootness argument fails because Defendant is at present simply "planning to replace the door" and "accepting bids for the work." Under this Circuit's precedent, and Defendant's own legal authority, this alleged barrier must be *remedied* in order to render this dispute moot. A mere intention to remedy the alleged barrier in the future is not enough, as it leaves open the possibility of a reversal of course, escaping the Court's review. Accordingly, Plaintiff's demand for injunctive relief is not moot.

---

[3] Mr. Vance does not qualify as an expert witness simply because Defendant puts him forth as one. "The Supreme Court in *Daubert* makes it plain that the trial court is to act as a gatekeeper in screening [expert] testimony for relevance and reliability, that is, make an assessment whether the reasoning and methodology underlying the testimony is … valid." *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 296–297 (8th Cir. 1996) (citing *Daubert*, 509 U.S. at 591-93, 113 S.Ct. 2786). Further, to the extent Mr. Vance's opinion rests on his interpretation of the ADAAG (attached to his correspondence with Defendant), any matter of law, *e.g.*, proper interpretation of the ADAAG, is for the Court to determine. *See, e.g.*, *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005) ("When … expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements."); *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (citations and quotations omitted) (noting that experts may not testify about the law because the judge's specialized legal knowledge is presumed to be sufficient); *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) ("testimony on ultimate issues of law" by an expert witness "is inadmissible because is it detrimental to the trial process"); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977) (expert testimony consisting of legal conclusions is inadmissible).

[4] In support of its assertion that Defendant has conceded there is only one outstanding violation, Defendant relies upon an email exchange between Defendant's counsel and Plaintiff in which Plaintiff writes: "With your expert being in a wheelchair for 16 plus years and finding 1 major issue (door width entrance) of the multiple issues, is confirmed." To this, Defendant's counsel responds: "If the only issue remaining in this case is the door and the door is replaced, the claims in your lawsuit are moot. I would ask that you dismiss the lawsuit prior to us filing our motion for summary judgment." Plaintiff then replies: "As far as dismissing the case, I will NOT. I will be requesting for all expenses to be paid by your defendant as well as damages, due to the allegations of DISCRIMINATION, being of truth and confirmed by your expert report, thanks." (Doc. No. 38-6.) The Court does not read this exchange as a concession by Plaintiff that there is only one outstanding violation.

- 11 -

## IV.     Plaintiff Is Not Entitled to Attorneys' Fees

The ADA authorizes a court to award attorneys' fees, litigation expenses, and costs to a prevailing party.  *See* 48 U.S.C. § 12205.  The Supreme Court has concluded, however, that "[t]he statutory policy of furthering the successful prosecution of meritorious [civil rights] claims is better served by a rule that creates an incentive to retain [independent] counsel," rather than a rule that creates an incentive to represent one's self.  *Kay v. Ehrler*, 499 U.S. 432, 438, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991).  In other words, the purpose of the fee-shifting provisions in the federal civil rights laws is to assist civil rights plaintiffs seeking the representation of counsel, rather than to reward those representing themselves.  *See id*. at 436, 11 S.Ct. 1435 (attorneys' fees "assume an agency relationship" and the purpose of fee-shifting provisions granting attorney fees to litigants is to "enable potential plaintiffs to obtain the assistance of competent counsel").  In light of *Kay*, and federal court decisions in its wake that have consistently declined to apply the fee-shifting provisions of the federal civil rights laws to *pro se* litigants, Plaintiff in the instant action, proceeding *pro se*, is not entitled to attorneys' fees under the ADA's fee-shifting provision.  *See, e.g.*, *Rhoads v. F.D.I.C.*, 94 Fed. Appx. 187 (4th Cir. 2004) (Americans with Disabilities Act); *Woodside v. School Dist. of Philadelphia*, 248 F.3d 129 (3d Cir. 2001) (Individuals with Disabilities Education Act); *Kooritzky v. Herman*, 178 F.3d 1315 (D.C. Cir. 1999) (Equal Access to Justice Act); *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684 (2d Cir. 1998) (Title VII); *see also Davis v. Parratt*, 608 F.2d 717, 718 (8th Cir. 1979) (*cited with approval in Kay*, 499 U.S. at 435 n.5, 111 S.Ct. 1435) (purpose of fee-shifting provisions under federal civil rights laws "is not to compensate *pro se* litigants, but to provide counsel fees to prevailing parties in order to give private citizens a meaningful opportunity to vindicate their rights").[6]

---

[6] On the other side of the coin, attorneys' fees are not to be awarded to a prevailing defendant under the ADA "unless the defendant establishes that the plaintiff's suit was totally unfounded, frivolous,

**CONCLUSION**

**IT IS HEREBY ORDERED** that, in accordance with the foregoing, Defendant's Motion for Summary Judgment (Doc. No. 37) is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

Dated this 4th day of April, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

or otherwise unreasonable or that the plaintiff continued the litigation after it clearly became so." *Steelman v. Delano*, 2012 WL 5616156, at *3 (E.D. Mo. Nov. 15, 2012) (citing *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)) (denying defendant's request for attorney's fees against plaintiff in this action after defendant prevailed at summary judgment stage).

- 13 -